IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-195-D

| | | |
|---|---|---|
| JOSEPH DIXON MIDYETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WASHINGTON COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On May 5, 2015, Joseph Dixon Midyette ("Midyette" or "plaintiff"), a state inmate proceeding pro se, filed this action under 42 U.S.C. § 1983 [D.E. 1]. Midyette proceeds in forma pauperis [D.E. 2, 9]. Midyette moves for a preliminary injunction and appointment of counsel [D.E. 7, 12]. As explained below, the court dismisses the complaint and denies Midyette's motions.

When an inmate seeks relief in a civil action from a governmental entity or officer, a court must review and dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a)–(b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Legally frivolous claims are based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotation omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted).

Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 677; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Midyette alleges that defendant Howard Payne, a former student at defendant North Carolina Wesleyan College and "teacher intern" at Roper Middle School or Washington County Union School, molested Midyette "on various dates between January 1, 1972 through December 31, 1973[,]" while Midyette was thirteen years old and Payne's student. [D.E. 1-1] 1–2, 5. Midyette alleges that these assaults occurred on school property and in Payne's car and apartment. Id. 2. Midyette also alleges that Payne and the other named defendants, North Carolina Wesleyan College, Washington County, and "Roper Middle or Washington County Union School[,]" conspired to "cover[] up 2nd degree sex offense scandal" and told Midyette "that if he ever revealed their secret, they would see that he got taken away from his parents and placed in a foster home." [D.E. 1] 3; [D.E. 1-1] 1–2. Midyette alleges that he "suffered complete memory suppression of the above events

2

. . . . from about Jan. 1, 1974 through Dec. 31, 2014, until [Midyette] began seeing commercials of N.C. Wesleyan College on T.V. advertisements." [D.E. 1-1] 3. Midyette seeks leave to proceed as a class action and compensatory and punitive damages. [D.E. 1] 1–2, 4.

The alleged misconduct occurred over forty years ago. Congress has not adopted a specific statute of limitations for actions brought under 42 U.S.C. § 1983. Instead, the analogous state statute of limitations applies. Burnett v. Grattan, 468 U.S. 42, 48–49 (1984); Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014); Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc). Specifically, the state statute of limitations for personal injury actions governs claims brought under 42 U.S.C. § 1983. Wallace v. Kato, 549 U.S. 384, 387 (2007). North Carolina has a three-year statute of limitations for personal injury actions. N.C. Gen. Stat. § 1-52(5). Thus, North Carolina's three-year statute of limitations governs Midyette's claims. See, e.g., Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996); Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161–62 & n.2 (4th Cir. 1991); Owens, 767 F.3d at 388. "When a state statute [of limitations] is borrowed . . . the federal court will also borrow the state rules on tolling." Shook ex rel Shook v. Gaston Cnty. Bd. of Educ., 882 F.2d 119, 121 (4th Cir. 1989); see Bd. of Regents v. Tomanio, 446 U.S. 478, 483–85 (1980); Bonneau v. Centennial Sch. Dist. No. 28J, 666 F.3d 577, 580 (9th Cir. 2012). North Carolina has a special tolling provision that preserves actions until an individual is no longer a minor. See N.C. Gen. Stat. § 1–17(a)(1); Genesco, Inc. v. Cone Mills Corp., 604 F.2d 281, 284 (4th Cir. 1979). Midyette alleges that he was thirteen years old when the assaults occurred in 1972–1973; thus, the court assumes without deciding that the statute of limitations began to run in approximately 1978, when Midyette reached age 18. See, e.g., Shook, 882 F.2d at 121; Genesco, 604 F.2d at 288 n.6; Simmons v. Justice, 87 F. Supp. 2d 524, 529 (W.D.N.C. 2000).

3

Although the limitations period and related tolling provisions for claims brought under section 1983 are borrowed from state law, the time for accrual of an action is a question of federal law. Wallace, 549 U.S. at 388; Owens, 767 F.3d 379 at 388–89; Brooks, 85 F.3d at 181. A claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. See, e.g., Wallace, 549 U.S. at 391; Nasim, 64 F.3d at 955. "[T]o determine the date of accrual for a particular § 1983 claim, a court must look to the common-law tort that is most analogous to the plaintiff's § 1983 claim and determine the date on which the limitations period for this most analogous tort claim would begin to run." Owens, 767 F.3d at 389; see Wallace, 549 U.S. at 388; Bonneau, 666 F.3d at 581.

Midyette argues that because he repressed the memories of his abuse, his claims did not accrue until approximately December 31, 2014, when he "began seeing commercials of N.C. Wesleyan College on T.V. advertisements." [D.E. 1-1] 3.[1] Several courts have recognized that, under the so-called "discovery rule," memory repression may serve to either toll or delay accrual of a statute of limitations in a section 1983 action. See, e.g., Bonneau, 666 F.3d at 581; Walker v. Barrett, 650 F.3d 1198, 1205–06 (8th Cir. 2011); Getchey v. Cnty. of Northumberland, 120 F. App'x 895, 898–99 (3d Cir. 2005) (per curiam) (unpublished); Onuffer v. Walker, No. CIV.A. 13-4208, 2014 WL 3408563, at *3–4 (E.D. Pa. July 14, 2014); Ernstes v. Warner, 860 F. Supp. 1338, 1341 (S.D. Ind. 1994). The Fourth Circuit has examined state law to determine whether the discovery rule

---

[1] To the extent Midyette relies on his memory repression as entitling him to additional tolling under N.C. Gen. Stat. § 1-17(a)(3), which tolls the statute of limitations for "incompetent" persons, Midyette has not met his burden of proving that memory repression rendered him incompetent. See Soderlund v. Kuch, 143 N.C. App. 361, 373–74, 546 S.E.2d 632, 640 (2001) ("The evidence is sufficient to show that plaintiff could and did manage his own affairs and make important decisions concerning his person and property. . . . Thus, we hold plaintiff was not incompetent. . . ."); Varnell v. Dora Consol. Sch. Dist., 756 F.3d 1208, 1214 (10th Cir. 2014) ("[A] person is incapacitated when [he] is unable to manage [his] business affairs or estate, or to comprehend [his] legal rights or liabilities.") (quotation and alterations omitted).

4

applies. See Wilmink v. Kanawha Cnty. Bd. of Educ., 214 F. App'x 294, 295–97 (4th Cir. 2007) (per curiam) (unpublished). Unfortunately for Midyette, "the North Carolina General Assembly has not included a discovery provision in section 1–52(5)." Doe v. Doe, 973 F.2d 237, 240–41 (4th Cir. 1992); see Doe v. Roman Catholic Diocese of Charlotte, NC, 775 S.E.2d 918, 922 (N.C. Ct. App. 2015). Alternatively, Midyette has failed to make the necessary allegations in order to support application of the discovery rule to his claims. See, e.g., Bonneau, 666 F.3d at 581; Kach v. Hose, 589 F.3d 626, 638 (3d Cir. 2009); Getchey, 120 F. App'x at 899; Onuffer, 2014 WL 3408563, at *5; Ernstes, 860 F. Supp. at 1341. Accordingly, Midyette's action is untimely.

Alternatively, Midyette has failed to state a claim against Washington County, North Carolina Wesleyan College, and "Roper Middle or Washington County School" for an additional reason: The county and schools are not vicariously liable for Payne's alleged acts. The doctrine of respondeat superior generally does not apply to a section 1983 action. See, e.g., Iqbal, 556 U.S. at 677; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Carter v. Morris, 164 F.3d 215, 218, 220–21 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798–99 (4th Cir. 1994). Alleging that a municipal employee committed a constitutional violation is necessary but not sufficient to state a claim against a municipality. A county may be found liable under 42 U.S.C. § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. Therefore, a county may not be found liable under section 1983 based on a theory of respondeat superior or simply for employing a tortfeasor. See, e.g., Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).

Section 1983 claims against supervisors are cognizable when liability is not premised upon respondeat superior but upon "a recognition that supervisory indifference or tacit authorization of

5

subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). To establish supervisory liability under section 1983, a plaintiff must establish three things:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices . . ."; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799; see Iqbal, 556 U.S. at 677; Rizzo v. Goode, 423 U.S. 362, 371 (1976); Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001). The subordinate's conduct must be "pervasive," meaning that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Shaw, 13 F.3d at 799 (quotation omitted). Although

> a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct[,] [a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding [that the supervisor] either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

Slakan, 737 F.2d at 373; see Randall v. Prince George's Cnty., Md., 302 F.3d 188, 206 (4th Cir. 2002). Here, Midyette has not plausibly alleged a claim for supervisory liability. See, e.g., A.W. v. Humble Indep. Sch. Dist., 25 F. Supp. 3d 973, 999–1002 (S.D. Tex. 2014); Armstrong v. Lamy, 938 F. Supp. 1018, 1034 (D. Mass. 1996).

To the extent Midyette alleges a conspiracy claim, to establish a civil conspiracy in violation of 42 U.S.C. § 1983, a plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's]

deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996); see Ward v. Coastal Carolina Health Care, P.A., 597 F. Supp. 2d 567, 571–72 (E.D.N.C. 2009) (discussing conspiracy to deprive persons of civil rights under 42 U.S.C. § 1985(3)). Conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element and therefore fail to state a claim. See Hinkle, 81 F.3d at 421–23. Midyette fails to plausibly allege a "meeting of the minds" between any defendants. Cf. Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 555–56. Thus, Midyette fails to state a claim against Washington County, North Carolina Wesleyan College, and "Roper Middle or Washington County School."

As for Midyette's motion to appoint counsel, no right to counsel exists in civil cases absent "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989); see Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163. The facts of this case and Midyette's abilities do not present exceptional circumstances. Accordingly, the court denies Midyette's motion for appointment of counsel [D.E. 12].

As for Midyette's motion for a preliminary injunction, a court may grant a temporary restraining order or a preliminary injunction if the moving party demonstrates "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). In Winter, the Supreme Court rejected the "standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was 'inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to

7

such relief.'" Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (quotation omitted), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Midyette has not established that he is likely to succeed on the merits, that he is likely to suffer irreparable harm absent injunctive relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. Thus, Midyette has failed to meet his burden of proof. Accordingly, the court denies the motion.

In sum, the court DENIES plaintiff's motions for a preliminary injunction and appointment of counsel [D.E. 7, 12] and DISMISSES the action. The clerk shall close the case.

SO ORDERED. This **23** day of October 2015.

*James Dever*
JAMES C. DEVER III
Chief United States District Judge